## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

**DON WHITE,**

      **Plaintiff,**

**vs.**                                        **No. CV 17-00983 JB/KRS**

**TOWN OF HURLEY,**

      **Defendant.**

## DEFENDANT'S *DAUBERT* MOTION TO EXCLUDE THE TESTIMONY AND OPINIONS OF BRIAN H. KLEINER AND MEMORANDUM IN SUPPORT THEREOF

**COMES NOW** the Town of Hurley, by and through its attorneys of record, Jarmie and Associates, and pursuant to FED. R. EVID. 403 and 702, respectfully request that this honorable Court exclude the opinions, report (the relevant portions of which are attached hereto as **Exhibit A**, referred to herein as "*Kleiner Report*"), and testimony of plaintiff's designated expert Dr. Brian H. Kleiner, or in the alternative, that the Court set a *Daubert* hearing regarding whether Dr. Kleiner should be allowed to testify. As set forth herein, Dr. Kleiner should be precluded from testifying at trial. Plaintiff has been contacted and opposes this Motion. For its *Daubert* Motion, the Town states as follows:

### I.    *Standards for Expert Testimony and Evidence*

Rule 702 of the Federal Rules of Evidence provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    (b) the testimony is based on sufficient facts or data;

    (c) the testimony is the product of reliable principles and methods; and

> (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702. As discussed in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and as refined in *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the purpose of Rule 702 has been to ensure that all expert testimony is both relevant and reliable. Thus, the Court must perform a "gatekeeping inquiry . . . tied to the facts of a particular case" to determine if the proposed expert testimony is properly admitted. *Kumho Tire*, 526 U.S. at 150 (internal quotation marks and citation omitted); *see also Smith v. Ingersoll-Rand Co.*, 214 F.3d 1235, 1243 (10th Cir. 2000) ("the gatekeeping function is a flexible and commonsense undertaking in which the trial judge is granted 'broad latitude' in deciding both how to determine reliability as well as in the ultimate decision of whether the testimony is reliable") (citing *Kumho Tire*, 526 U.S. at 141-42).

This Court's determination of an expert opinion's admissibility involves a two-step analysis: "First, the court must 'determine whether the expert is qualified 'by knowledge, skill, experience, training, or education' to render an opinion. … If the court finds that 'the expert is sufficiently qualified, then 'the court must determine whether the expert's opinion is reliable by assessing the underlying reasoning and methodology.'" *Moriarty v. Bd. of Cnty. Comm'rs for the Cty. of Sandoval*, 931 F.Supp.2d 1142, 1161 (D.N.M. 2013) (citing *United States v. Avitia-Guillen*, 680 F.3d 1253, 1256 (10th Cir. 2012), *cert. denied*, 133 S.Ct. 466, (2012)). The purpose of the *Daubert* gatekeeping function is to undertake whatever inquiry is necessary to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire*, 526 U.S. at 152. The trial judge in all

cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before he or she admits the evidence. *See* FED. R. EVID. 702, Advisory Committee Notes (2000 Amend.). "If the witness is relying solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached …and how that experience is reliably applied to the facts. The trial court's gatekeeping function requires more than simply 'taking the expert's word for it.'" *See id.*

To be reliable under *Daubert*, the expert must derive his or her inference or assertion by a proper method and must support his or her opinion by appropriate validation, i.e., good grounds, based on what is known. *See Daubert*, 509 U.S. at 590. Plaintiffs must show that the method employed by their expert "in reaching the conclusion is scientifically sound and that the opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge v. Cotter Corp.*, 328 F.3d 1212, 1222 (10th Cir. 2003) (citation omitted). Expert opinions "must be based on facts which enable [the expert] to express a reasonably accurate conclusion as opposed to conjecture or speculation." *Dodge*, 328 F.3d at 1222 (quoting *Gomez v. Martin Marietta Corp.*, 50 F.3d 1511, 1519 (10th Cir. 1995)). Ultimately, it is plaintiff who bears the burden of demonstrating to the Court that his expert's "opinion is based on facts which satisfy Rule 702's reliability requirements." *Dodge*, 328 F.3d at 1222.

Additionally, the relevance of proposed expert testimony also must be weighed against the danger of "unfair prejudice, confusing the issues, [or] misleading the jury" as well as considerations of "undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Expert witnesses may not usurp the jury's fact-finding role in determining whether the applicable legal standard has been met in a given case. *See Adams*, *supra*, 271 F.3d

at 1245-46.  Nor may such witnesses usurp the Court's role in instructing the jury on what that legal standard is in a given case.  *See Specht v. Jensen*, 853 F.2d 805, 807-09 (10th Cir. 1988). Opinions that merely apply key words from the legal standards at issue in the case to Defendant's actions are inadmissible—"an expert may not state his or her opinion as to legal standards nor may he or she state legal conclusions drawn by applying the law to the facts." *Okland Oil Co. v. Conoco Inc.*, 144 F.3d 1308, 1328 (10th Cir. 1998) (citing *A.E. ex rel. Evans v. Indep. Sch. Dist. No. 25*, 936 F.2d 472, 476 (10th Cir. 1991)).

## II.    Facts

In his expert report, Dr. Kleiner sets forth one conclusory, single-sentence opinion: namely, that the Town of Hurley's "treatment of [plaintiff] was not done in a manner consistent with standards established by the U.S. Equal Employment Opportunity Commission." *Kleiner Report*, p.8.[1] Prior to generating this opinion, Dr. Kleiner reviewed eight items: plaintiff's Complaint and the exhibits attached thereto (Doc. Nos. 1 to 1-8, filed Sep. 26, 2017), the deposition transcripts for plaintiff and four current and former Town of Hurley officials and personnel, and two publications from the EEOC. *See Kleiner Report*, p.8. Apart from these eight items, Dr. Kleiner did not review any other documents (including the Town's Answer to plaintiff's Complaint, or the parties' written discovery responses). *Deposition of Brian Kleiner*, attached hereto as **Exhibit B** (hereinafter "*Kleiner Deposition*"), at 20:25 to 21:16, 23:24 to 24:6.

The majority of Dr. Kleiner's Report in this case merely sets forth "standards of conduct for employers to follow" from EEOC publications. The text at pages 8 to 14 of his Report is taken verbatim from the EEOC's Notice No. 915.002 (identified as item number 6 in the

---

[1] Citations to the attached excerpts of the Kleiner Report are made to the page numbers appearing on the Report itself.

4

"Information Considered" section of Dr. Kleiner's report. *Compare Kleiner Report*, pp.8-14, with EEOC Notice No. 915.002, *Enforcement Guidance: Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act*, available at 2002 WL 31994335, *14-*15, *16-*17, *19-*20, *23, *30 (Oct. 17, 2002). Similarly, the text at pages 14 to 15 of the Report is taken from a second EEOC publication (item 7 in Dr. Kleiner's "Information Considered"). *Compare Kleiner Report*, pp.14-15, with EEOC, "Employer-Provided Leave and the Americans with Disabilities Act" (May 9, 2016), *available at* https://www.eeoc.gov/eeoc/publications/ada-leave.cfm (last accessed Aug. 31, 2018). Dr. Kleiner did not editorialize these excerpts from the EEOC's publications—he merely copied and pasted what he deemed to be the relevant sections of these publications into his report. *See Kleiner Deposition*, at 24:15 to 26:8.

At pages 15 to 16 of his Report, Dr. Kleiner summarized or quoted discrete excerpts from deposition transcripts in support of his opinion. *See generally Kleiner Report*, pp.15-16; *Kleiner Deposition*, at 33:23 to 34:1. Dr. Kleiner cherry-picked and "summarized" excerpts from the deposition of former Hurley Police Chief Pete Ordonez, suggesting that Chief Ordonez would not allow plaintiff "any more time off because he 'needed to replace the [patrol officer] position." *Kleiner Report*, p.15. Kleiner admitted that former Chief Ordonez identified "specific hardships to the police department by keeping [plaintiff] on unpaid leave," including "Scheduling, [and] not having officers out on the street all the time, causing the sheriff's department to cover for us from time to time." *Id.* However, Dr. Kleiner's report fails to acknowledge that plaintiff was granted a one-year-and-one-day period of unpaid leave in response to plaintiff's counsel's September 11, 2014 letter requesting leave. *Compare Kleiner*

5

*Report*, pp.15-16, *with* Doc. No. 1-1 (filed Sep. 26, 2017); Doc. No. 1-2 (filed Sep. 26, 2017); *see also Kleiner Deposition*, at 29:24 to 30:21, 33:19 to 34:3; *Deposition of Pete Ordonez*, attached hereto as **Exhibit C** (hereinafter "*Ordonez Deposition*"), at 17:1 to 18:10. Dr. Kleiner's Report also failed to account for plaintiff's admission that, while plaintiff was out on leave, the Town of Hurley was short two police officers. *Compare Kleiner Report*, at pp.15-16, *with Kleiner Deposition*, at 34:7-17; *Deposition of Don White*, attached hereto as **Exhibit D** (hereinafter "*White Deposition*"), at 40:4-11.

Dr. Kleiner also stated that Chief Ordonez "made no inquiry as to any other positions maybe of lesser responsibility that [plaintiff] would be qualified to come back for." *Kleiner Report*, p.16. In support of this assertion, Dr. Kleiner cites to page 13 of Mr. Ordonez's deposition—however, the actual exchange cited on this page was as follows:

> Q. So -- and did you make any inquiry as to any other positions maybe of lesser responsibility that he would be qualified to come back for?
> MR. STANDRIDGE: Form.
> Go ahead.
> A. No, I didn't because at the time he hadn't received a doctor's release so -- and I don't believe there was any other positions available within the town, as a matter of fact.

*Ordonez Deposition*, at 13:8-16. Not only did Dr. Kleiner fail to account for the fact that Mr. Ordonez's deposition testimony was given subject to the undersigned's objection, Dr. Kleiner also failed to account for plaintiff's own admissions that he 1) did not secure a doctor's written release to return to work and 2) did not actually request assignment to another position or "light duty." *Compare Kleiner Report*, at p.16, *with Kleiner Deposition*, at 34:19-22; *White Deposition*, at 40:23 to 41:11.

At the end of his report, Dr. Kleiner purported to set forth a series of "sub-opinions" in support of the single-sentence primary opinion set forth at page 8 of his Report. *See Kleiner*

*Report*, at pp.16-17; *Kleiner Deposition*, at 19:11 to 20:22. In these "sub-opinions," Dr. Kleiner

purported to state that

> there is insufficient evidence to suggest that the [Town] did any of the following:
>
> a. Even considered Mr. White's rights and their [sic] obligations with respect to the Americans with Disabilities Act.
> b. Modified their leave policy to accommodate Mr. White's disability.
> c. Investigated to determine if there was a vacant position that could be held for Mr. White until he returned from leave.
> d. Investigated to determine if it was an undue hardship to keep [plaintiff]'s position open until his return or, if so, a vacant position for which [plaintiff] would be qualified to fill. As it stands, according to the deposition testimony of Peter Ordonez, not having officers out on the street all the time, causing the sheriff's department or state police to cover them from time to time…hardly amounts to being an undue hardship.

*Kleiner Report*, at pp.16-17.

Dr. Kleiner purported to derive the opinion set forth in his Report "from the scientific

methodology described in Exhibit B" to the Report. *See Scientific Methodology Used to Create*

*Expert Report*, attached hereto as **Exhibit E**. Dr. Kleiner identified the actual "methodology used

in creating these opinions found in [his] report" as "content analysis." *Id.* at p.2. Per Dr. Kleiner,

"[i]nformation is obtained through outside research and study of relevant organizational

documents and deposition testimony of organizational managers and employees." *Id.* That

information is then "compared to the relevant criteria for appropriate human resource

management." *Id.* Content analysis "involves reading relevant documents and identifying key

concepts and sentences and then compiling them into themes. These themes are then examined to

determine consistencies and inconsistencies to appropriate human resource management

practices." *Id.*; *see also Kleiner Deposition*, at 35:18-22. Dr. Kleiner stated that, in his analysis,

he "rel[ied] on the facts of the case as revealed by content analysis" and "consistently appl[ied]

the principles of appropriate human resources management." **Exhibit E**, at p.3. Dr. Kleiner

admitted that he could not render any legal opinion or conclusion of law in this case, as doing so would improperly invade the province of the jury. *See Kleiner Deposition*, at 29:11-20.

### III.     *Argument and Authorities*

### A.     Dr. Kleiner's Opinions are Inadmissible Legal Conclusions

As noted above, generally, an expert may not state his or her opinion as to legal standards, nor may he or she state legal conclusions drawn by applying the law to the facts. *Christiansen v. City of Tulsa*, 332 F.3d 1270, 1283 (10th Cir. 2003) (quoting *Okland Oil Co. v. Conoco Inc.*, *supra*, 144 F.3d at 1328). Numerous courts have excluded an expert's testimony for stating legal conclusions. *See, e.g.*, *Valtierra v. City of L.A.*, 99 F.Supp.3d 1190, 1198 (C.D. Cal. 2015) (expert "repeatedly opine[d] that the use of force was 'excessive' or 'unreasonable' under the circumstances...Whether the officers' actions were 'objectively reasonable' in light of the facts and circumstances confronting them is, however, a question for the jury or, if no material facts are in dispute, for the Court"); *Ligon v. LaFuaci*, 2015 WL 363723, *4 (N.D. Cal. Jan. 22, 2015) (unpublished) (finding that expert "may not provide his opinion on ultimate legal conclusions and may not testify as to what he believes happened in this case"); *Amin-Akbari*, *supra*, 52 F.Supp.3d at 848 (expert "offer[ed] legal conclusions such as the officers were 'deliberately indifferent,' and that the officers' actions were the 'proximate cause' of Plaintiff's injuries. These are not appropriate subjects for expert opinion testimony"); *Valiavicharska*, *supra*, 2012 U.S. Dist. LEXIS 8191, *13 (expert "may not offer any legal opinions or legal instruction and will not instruct the jury on any aspect of the Penal Code, the Constitution, or the elements of the charge faced by Defendant"); *Carr v. Montgomery Cnty.*, Civ. Action H-13-2795, Order, p.15 (S.D. Tex. Oct. 7, 2015) (unpublished) (expert "cannot tell the jury that

Defendants did not behave as reasonable officers").

The conclusions that Dr. Kleiner has stated in his report are merely opinions that apply legal key words to the Defendant's conduct and embrace legal standards to which Kleiner cannot testify. *See Moriarty*, *supra*, 931 F.Supp.2d at 1162. Dr. Kleiner's opinions, as formulated in his Report, are not helpful or admissible because they constitute impermissible legal conclusions reserved for the trier of fact. *Engman v. City of Ontario, California*, 2011 WL 2463178, *8 (C.D. Cal. June 20, 2011) (unpublished). In particular, Dr. Kleiner makes a blanket assertion that the Town's treatment of plaintiff "was not done in a manner consistent with standards established by the U.S. Equal Opportunity Employment Commission." *Kleiner Report*, p.8. By his own admission, the "standards" set forth in his Report—indeed, the majority of the actual text of his Report—comes directly from two EEOC publications regarding the Americans with Disabilities Act. *See Kleiner Deposition*, *supra*, at 24:15 to 26:8; *see also id.* at 21:4 to 22:4.

Of course, EEOC publications regarding the ADA are merely that agency's interpretation of the statute. *See*, *e.g.*, *Travelers Cas. and Sur. Co. of Am. v. Adecco USA, Inc.*, 2013 WL 4776771, *2 (N.D. Ind. Sep. 5, 2013) (unpublished) ("[t]he publications from the EEOC are…an agency's interpretation of federal statute"); *Scheetz v. PYOD LLC*, 2013 WL 5436943, *7 (N.D. Ind. Sep. 26, 2013) (unpublished); *Saye v. Vanity Fair Brands, LP*, 2009 WL 10668455, *7 n.8 (N.D. Ga. Oct. 26, 2009) (unpublished) ("[t]he EEOC's Enforcement Guidance publication does not carry the force of law"); *Reljic v. Tullett Prebon Americas Corp.*, 2011 WL 2491342, *2 n.2 (D.N.J. June 21, 2011) (unpublished); *see also EEOC v. U.S. Steel Corp.*, 2013 WL 625315, *21 (W.D. Pa. Feb. 20, 2013) (unpublished) (agency's enforcement guidelines "lack the force of law") (quoting *Christensen v. Harris Cnty.*, 529 U.S. 576, 587 (2000)). As then-Tenth Circuit

Judge (and now United States Supreme Court Justice) Neil Gorsuch has noted, an EEOC manual "commands deference only to the extent its reasoning actually proves persuasive." *Hwang v. Kansas State Univ.*, 753 F.3d 1159, 1163 (10th Cir. 2014) (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 111 n.6, (2002); *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1047 n.16 (10th Cir. 2011)); *see also EEOC v. U.S. Steel Corp.*, 2013 WL 625315, at *21.

As noted above, the "standards" that Dr. Kleiner has identified as being pertinent to this case come from two EEOC publications pertaining to the Americans with Disabilities Act. Thus, in his Report, all Dr. Kleiner has done is set forth a conclusory opinion supported primarily by agency interpretations of federal statutes. Dr. Kleiner's Report sets forth only inadmissible legal conclusions pertaining to the ADA. Dr. Kleiner suggests that the Town failed to consider plaintiff's rights and the Town's responsibilities with respect to the ADA, including whether or not there was a vacant position to which plaintiff could be assigned. *Kleiner Report*, pp.16-17. These are improper legal conclusions. *See Bell v. Owens-Illinois, Inc.*, 2002 WL 32107217, *9 (W.D. Pa. Aug. 29, 2002) (unpublished) ("Defendants argue that Dr. Luderer makes unsupported legal conclusions that Defendants failed to meet their obligations under the ADA… I agree with Defendants that it is evident that Dr. Luderer's conclusion is not based on his personal knowledge of the steps taken by Defendants"). Similarly, whether the Town reasonably accommodated plaintiff is a legal conclusion. *See, e.g., Noll v. Int'l Business Machines Corp.*, 787 F.3d 89, 96 (2d. Cir. 2015) (whether American Sign Language interpreters—who were provided to deaf employee--were "effective" was a pure legal conclusion regarding employer's obligation to provide reasonable accommodation under ADA); *Donelson v. Providence Health & Servs.-Washington*, 823 F.Supp.2d 1179, 1193 (E.D. Wash. 2011) (proposed expert testimony

that extending nurse's unpaid leave was a reasonable accommodation was a legal conclusion); *Steffy v. Cole Vision Corp.*, 2008 WL 7053517, *4 (E.D. Wis. Jan. 9, 2008) (unpublished). Dr. Kleiner cannot render legal conclusions as opinions in this case.

Dr. Kleiner concludes his Report by opining that the Town "not having officers out on the street all the time, causing the sheriff's department or state police to cover them from time to time…hardly amounts to being an undue hardship." *Kleiner Report*, p.17. As with his other opinions, this is improper: experts are not permitted to render legal conclusions on the issues of reasonableness and undue hardship. *See*, *e.g.*, *United States v. Dental Dreams, LLC*, 2018 WL 1577944, *2 (D.N.M. Mar. 29, 2018) (unpublished) (citing *Specht v. Jensen*, *supra*, 853 F.2d at 808 ("[t]he basis for this distinction is that testimony on the ultimate factual questions aids the jury in reaching a verdict; testimony which articulates and applies the relevant law, however, circumvents the jury's decision-making function by telling it how to decide the case")); *Tyson v. Oregon Anesthesiology Group, P.C.*, 2008 WL 2371420, *15 (D. Or. June 6, 2008) (unpublished) ("Doctor Olson also expressed the opinion about what accommodations in the workplace were necessary for plaintiff to work in pain management, and that they were not an 'undue hardship.'…These legal conclusions proffered by Dr. Olson were improper").

In sum, Dr. Kleiner's legalistic assertions will not aid the trier of fact in ascertaining any scientific, technical or other specialized fact that is beyond the knowledge of an ordinary person. Instead, all Dr. Kleiner has done is state a series of legal conclusions regarding what the Town of Hurley did—or should have done—in response to plaintiff's requests for leave, usurping both the jury's fact-finding/decision-making role and this Court's role in instructing the jury on the relevant law. *See DeMerrell v. City of Cheboygan*, 206 F. App'x 418, 426 (6th Cir. Oct. 31,

11

2006) (unpublished). This is improper, and warrants the exclusion of Dr. Kleiner's testimony and opinions from this case.

       B.    <u>Dr. Kleiner Has Rendered Similar Improper Opinions that Have Been Excluded in Prior Cases</u>

Dr. Kleiner's testimony has been limited—or excluded outright—in several similar cases wherein Dr. Kleiner rendered improper and inadmissible expert opinions. *See*, *e.g.*, *Kuang v. Bel Air Mart*, 205 F.Supp.3d 1155, 1159-61 (E.D. Cal. 2016). In *Rieger v. Orlor, Inc.*, 427 F.Supp.2d 99 (D. Conn. 2006), an employment discrimination action in which plaintiff asserted claims of discrimination and retaliation under, *inter alia*, the ADEA and ADA, Dr. Kleiner purported to opine that the Defendants could have "accommodate[d] the plaintiff's disability without significant impact to the defendants" but chose to retaliate against plaintiff instead, that the Defendants "did not take reasonable care to prevent discrimination and harassment of the plaintiff," that the Defendants' rationale for downsizing the plaintiff from her position as service advisor [wa]s inadequate," and that Defendants' "procedures for doing so did not follow appropriate practices of human resources management." *See Rieger*, 427 F.Supp.2d at 100-01.

On Defendants' motion to exclude, the Court in *Rieger* found that the first of Dr. Kleiner's opinions "include[d] two legal conclusions based on certain facts in the record and therefore impermissibly invade[d] the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions." *Rieger*, 427 F.Supp.2d at 103. As in the present case, Dr. Kleiner's opinion did not proffer any specialized knowledge, and invoked legal standards that would not aid the jury. *Id.* at 104. The Court also found that Dr. Kleiner's second opinion, "that defendants did not take reasonable care to prevent discrimination and harassment of plaintiff…would invade the jury's province for the same reason." *Id.* (citation omitted).

12

Moreover, the first part of Dr. Kleiner's third opinion, "that 'defendants' rationale for downsizing the plaintiff from her position as service advisor [wa]s inadequate'…suffer[ed] the same fatal flaw as…first two opinions," while his opinion that Defendants' "'procedures for [downsizing] did not follow appropriate practices of human resources management'…d[id] not describe or list the claimed 'appropriate practices of human resources management.'" *Id.* at 104-05. As such, the Court granted the Defendants' motion to limit Dr. Kleiner's testimony. *Id.* at 105; *see also Wilhoite v. Bi-Lo, LLC.*, 2007 WL 5117410, *2 (E.D. Tenn. June 29, 2007) (unpublished) ("the opinions of Mr. Miner…as was the case with the opinions of Dr. Kleiner in *Rieger*, improperly invade the province of the jury and, in essence, simply tell the jury what result to reach").

In *Carmichael v. Raytheon Co.*, 2010 WL 11549436 (C.D. Cal. Nov. 4, 2010) (unpublished), plaintiff sought to present the testimony of Dr. Kleiner regarding "appropriate human resources management practices to prevent disability discrimination, age discrimination and wrongful termination." *Carmichael*, 2010 WL 11549436, at *5. The Defendant argued, *inter alia*, that Dr. Kleiner's opinions "d[id] not appear to be the product of any particular methodology and tend[ed] to invade the province of the jury." *Id.* The Court agreed, noting that in his report Dr. Kleiner "cite[d] to legal standards articulated in various administrative publications and offer[ed] his opinion as to whether the standard has been met." *Id.* In reaching his conclusions, Dr. Kleiner "d[id] not employ any scientifically or technically developed methodology such that his opinion would provide a valuable insight that the jury could not reach on its own." *Id.* Rather, the Court found that Dr. Kleiner undertook "precisely the same analysis that the jury w[ould] be tasked with—he consider[ed] the legal standards, assesse[d] the

13

evidence, and opine[d] on whether the standard ha[d] been met." *Id.* The Court found that the "jury need[ed] no assistance from him regarding that task." *Id.* (citing *Holly D. v. California Inst. of Tech.*, 339 F.3d 1158, 1178 n.23 (9th Cir. 2003) ("no evidence ... that [Dr. Kleiner's] expertise in human resource management encompasses a determination of the proper credibility or weight to be given to the statements of individual witnesses")); *see also Sullivan v. Salt River Project Agricultural Improvement and Power Dist.*, 2014 WL 11514480, *4 n.7 (D. Ariz. June 5, 2014) (unpublished) (rejecting Dr. Kleiner's opinion that Defendant "did not treat the plaintiff in a manner consistent with appropriate human resources management practice" per *Holly D.*).

Similarly, in *Brown v. West Corp.*, 2014 WL 1757576 (D. Neb. May 1, 2014) (unpublished), the plaintiff intended to use Dr. Kleiner's expert testimony regarding human resource practices to support plaintiff's claims of disparate treatment "by showing that West's actions toward [plaintiff] did not conform to standard human resource practices or West's own policies." *Brown*, 2014 WL 1757576, at *1. Dr. Kleiner opined that "[t]he defendant's treatment of Mr. Brown prior to his resignation was inconsistent with appropriate human resource management practice generally and its own policy to provide equal employment opportunities and fair treatment of all employees specifically." *Id.* The Defendant West Corporation argued that Dr. Kleiner's opinion was "not based on any recognizable methodology, particularized knowledge, or expertise, but rather consist[ed] of a blanket conclusion he reached after reviewing specific facts of the case and deposition testimony of the plaintiff and West's employees." *Id.* The Court agreed that "that Dr. Kleiner's report offer[ed] only a conclusory statement without expressly establishing or applying any industry standard," and that his report "consist[ed] mostly of a recitation of certain facts and deposition excerpts." *Id.* at *2. "[T]o the

extent that Dr. Kleiner simply compared evidence of West's actions to West's employment policies, the jury is capable of making such a comparison without the aid of expert opinion." *Id.*

In *Wagner v. ABW Legacy Corp, Inc.*, 2016 WL 880371 (D. Ariz. Mar. 8, 2016) (unpublished), Dr. Kleiner opined that "[t]he 'return to work' practices followed by [Defendant] in relation to [plaintiff] were not consistent with the standard of care of appropriate human resource management practice." *Wagner*, 2016 WL 880371, *2. Specifically, Dr. Kleiner opined that 1) Defendant "did not adequately develop and formalize their policies and procedures concerning their return-to-work process and train their personnel, especially [plaintiff], on them"; 2) "[a]s a result, their interactive process with [plaintiff] was inadequate; and they never selected and made an offer of reasonable accommodation to him that was consistent with his limitations"; and 3) Defendant "terminated [plaintiff's employment] without adequate justification after he properly complied with their latest request of him to call them back if he was interested in continuing his employment with them." *Id.* As in the present case, Dr. Kleiner relied upon the EEOC to set forth "the applicable 'standard of care' relevant to his analysis." *See id.* In support of his opinions, Dr. Kleiner cited "to the EEOC standard of care" as well as his summary of selected portions of deposition testimony. *See id.* at *3.

In *Wagner*, the Court excluded Dr. Kleiner's testimony because the methodology he employed was unreliable and he sought to testify to matters that were within the understanding of the jury or that were legal conclusions not properly the subject of expert testimony. *Wagner*, 2016 WL 880371, *6. The Court found Dr. Kleiner's Report "d[id] not include any analysis regarding how he applied the proffered standard of care to this case…Rather, he merely cited to limited portions of the deposition transcripts he reviewed, without explanation or analysis as to

how those excerpts support[ed] his conclusions and whether, and to what extent, he considered conflicting testimony among the witnesses regarding the same issues." *Id.* at *7. Indeed, as in the present case, "it appear[ed] that Dr. Kleiner gave more weight to deposition testimony that support[ed] his conclusions, while failing to consider or at least address and analyze contrary testimony." *Id.* Dr. Kleiner's "apparent dismissal of relevant evidence without any analysis is not a reliable methodology in reaching his opinions." *Id.* (citing *In re Rezulin*, 309 F.Supp.2d 531, 551 (S.D.N.Y. 2004) (holding expert testimony inadmissible where the expert "does no more than counsel for plaintiff will do in argument, i.e., propound a particular interpretation of [Defendant]'s conduct") (quotation omitted).

As "Dr. Kleiner's review of deposition testimony and his resulting credibility determinations [we]re within the common understanding of the jury, the Court in *Wagner* found that his "Report and opinions d[id] not appear to offer any expertise to assist the jury." *Wagner*, 2016 WL 880371, *7 (citations omitted). Finally, although Dr. Kleiner couched his opinions as relating to a failure to follow an applicable standard of care (as he did in the instant case), "his opinion that Defendant terminated Plaintiff's employment without 'adequate justification' [wa]s really a legal conclusion regarding the ultimate issue on…whether Defendant unlawfully terminated Plaintiff's employment." *Id.* The Court thus excluded this testimony as inadmissible.

More recently, in *English v. Estes Express Lines*, 2018 WL 1136058 (C.D. Cal. Feb. 15, 2018) (unpublished), Dr. Kleiner "opine[d] that plaintiff's termination 'was inconsistent with appropriate human resource management,'" based upon: an article written by Kleiner himself; Defendants' attendance policies; Defendants' documentation of plaintiff's communications regarding his absences; plaintiff's complaint; and certain deposition testimony. *English*, 2018

16

WL 1136058, at *3. Kleiner purported to opine that Defendants "impermissibly terminated plaintiff's employment according to their own attendance policies." *Id.* The Court found that Kleiner's proposed testimony on this subjects should be excluded, "as these [we]re issues for the jury to decide." *Id.* at *5; *see also id.* at n.4 ("Kleiner is precluded from interpreting the meaning of defendants' attendance policies, whether the attendance policies are reasonable, and whether defendants permissibly terminated plaintiff's employment").

Additionally, in *Marting v. Crawford & Co.*, 2004 WL 305724 (N.D. Ill. Jan. 9, 2004), (unpublished), *aff'd*, 2004 WL 5822813 (N.D. Ill. Mar. 24, 2004) (unpublished)—a Fair Labor Standards Act (FLSA) case—the plaintiff retained Dr. Kleiner as an expert in "job analysis." *See Marting*, 2004 WL 305724, at *1. Kleiner purported to opine that the plaintiff "did not customarily or regularly exercise discretion and independent judgment," in the face of Defendant's argument that plaintiff was employed "in an administrative capacity and her work required 'the exercise of discretion and independent judgment' which would place her in an "exempt" category for purposes of FLSA *See id.* (quoting 29 C.F.R. § 541.207(a)). The Magistrate Judge noted that Dr. Kleiner had "not published any articles regarding his methodology of analyzing jobs to determine if they are exempt or non-exempt under the FSLA." *Marting*, 2004 WL 305724, at *2. "Kleiner's analysis was…merely based on dividing [plaintiff's] tasks up and deciding if she exercised discretion and independent judgment in each category." *Id.* at *3. The Magistrate Judge found that Dr. Kleiner's analysis improperly went "to the ultimate legal issue of the case. *Id.* (citing *Bammerlin v. Navistar Int'l Transp. Corp.*, 30 F.3d 898, 900–01 (7th Cir. 1994) (finding that meaning of federal regulations was issue of law, not

issue of fact for experts to speculate upon)). Dr. Kleiner's report "merely parrot[ed plaintiff's] assertions that she [wa]s a non-exempt employee…without providing significant analysis." *Id.*

In the present case, as it each of these prior cases, Dr. Kleiner's legal conclusions are based on certain cherry-picked facts in the record, and impermissibly invade the jury's province to apply the applicable law to the facts of the case and reach ultimate legal conclusions. *Rieger*, *supra*, 427 F.Supp.2d at 103. Dr. Kleiner's opinions are not the product of any particular methodology and tend to invade the province of the jury. *Carmichael*, *supra*, 2010 WL 11549436, at *5. Dr. Kleiner did not employ "any scientifically or technically developed methodology such that his opinion would provide a valuable insight that the jury could not reach on its own." *Id.* Instead, the lone methodology that Dr. Kleiner identified—"content analysis"—is precisely what the jury would be tasked to do in this case (i.e. review the relevant documentary evidence and compare it to the relevant legal standards). *See id.* Dr. Kleiner's Report in this case offers only a conclusory statement without expressly establishing or applying any industry standard, and the Report consists mostly of a recitation of certain facts and deposition excerpts along with copied-and-pasted EEOC publications. *See Brown*, *supra*, 2014 WL 1757576 at *2. As in *Wagner*, *supra*, 2016 WL 880371 at *2-*3, Dr. Kleiner relied upon the EEOC to set forth the applicable "standard of care" relevant to his analysis, as well as his summary of selected portions of deposition testimony. It also appears that Dr. Kleiner gave more weight to deposition testimony that support his conclusions, while failing to consider or at least address and analyze contrary testimony. *Id.* at *7. As was the case in *Wagner*, Dr. Kleiner's "apparent dismissal of relevant evidence without any analysis is not a reliable methodology in reaching his opinions." *Id.* Ultimately, Dr. Kleiner's report merely parrots plaintiff's assertions that he was subjected to

discrimination, without providing significant analysis that would aid a jury. *Marting*, *supra*, 2004 WL 305724, at *3. As such, Dr. Kleiner's opinions and testimony must be excluded.

      C.    <u>Brian Kleiner's Report is Inadmissible Hearsay</u>

      Finally, the Town requests that this Court exclude Brian Kleiner's expert report from presentation to the jury at trial, as this report is inadmissible hearsay. *See*, *e.g.*, *Skyline Potato Co., Inc. v. Hi-Land Potato Co., Inc.*, No. CV-10-0698 JB/RHS, Doc. No. 341, Mem. Op. and Order (D.N.M. Jan. 18, 2013) (unpublished), at 30-32; *Vondrak v. City of Las Cruces*, 2007 WL 2219449, at *3 n.4 (D.N.M. May 14, 2007) (unpublished), *aff'd in part, rev'd in part, dismissed in part*, 535 F.3d 1198 (10th Cir. 2008) (excluding expert report "because rule 703 of the Federal Rules of Evidence allows an expert to rely on inadmissible facts in reaching an opinion or inference, but does not allow the proponent of the expert testimony to use the expert as a conduit for a party to get in otherwise inadmissible evidence"); *Potts v. Sam's Wholesale Club*, 108 F.3d 1388 (10th Cir. 1993) (unpublished table decision).

      D.    <u>Conclusion</u>

      In this case, as detailed above, Dr. Brian Kleiner followed a methodology whereby he reviewed witness testimony and made credibility determinations favorable to his conclusions. His conclusory Report, which provides a summary of select portions of the testimony, with no analysis or application of his expertise, does not meet the requirements of Rule 702. Further, Dr. Kleiner's interpretation of witness testimony is within the common understanding of the jury and contains legal conclusions. Accordingly, this Court should grant Defendant's Motion to Exclude Dr. Kleiner's testimony. *See Wagner*, *supra*, 2016 WL 880371, at *8.

**WHEREFORE**, the Town of Hurley respectfully requests that this honorable Court exclude and not consider the opinions, testimony, and expert report of Brian Kleiner in this matter, or in the alternative, that the Court set this matter for a *Daubert* hearing to determine whether or not Dr. Kleiner should be allowed to testify on any subject, and for such other relief as this Court believes just and appropriate.

Respectfully submitted,

 /s/ Mark D. Standridge
Mark D. Standridge
Jarmie & Associates
P.O. Box 344
Las Cruces, NM 88004
(575) 526-3338
Fax: (575) 526-6791
mstandridge@jarmielaw.com
*Attorneys for Town of Hurley*

I hereby certify that I filed the foregoing with this Court's CM/ECF filing system, causing a true and correct copy to be served electronically on all counsel of record on this 31st day of August, 2018, as reflected more fully in the Notice of Electronic Filing.

/s/ Mark D. Standridge
Mark D. Standridge
Jarmie & Associates